```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                   :
LARRY LAVONNE BERRY,               :
                                   :
        Plaintiff,                 :   Civ. No. 17-4904 (NLH)(JS)
                                   :
    v.                             :   OPINION
                                   :
S. FITZGERALD, OFFICER WRIGHT,     :
                                   :
        Defendants.                :
_____:
```

APPEARANCES:

Larry Lavonne Berry, No. 70372-056
FCI Fairton
P.O. Box 420
Fairton, NJ 08320
    Counsel for Plaintiff

Kristin Lynn Vassallo, Esq.
Office of the U.S. Attorney
970 Broad Street
Newark, NJ 07102
    Counsel for Defendants

HILLMAN, District Judge

Plaintiff Larry Lavonne Berry, a pro se inmate formerly incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey, brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against two employees of the Federal Bureau of Prisons, Stephen Fitzgerald and Robert Wright, alleging that they coerced and threatened him into having sex while he was incarcerated at FCI Fort Dix.  Presently before the Court is Defendants' Motion for Summary Judgment, which is ripe for

1

adjudication. See ECF No 17. For the reasons that follow, the Court will deny the Motion.

I. Factual Background

In the Complaint, Plaintiff alleges that he was "force[d] to have a sexual relationship with Officer Wright," who worked in the laundry, beginning on August 21, 2014. ECF No. 1 at 5. Plaintiff further alleges that Wright told Officer Fitzgerald about what he did with Plaintiff, and that Plaintiff was then "coerce[d] and threaten[ed] to have sex with Officer S. Fitzgerald [in] approximately June [or] July 2015." Id. at 5-6. According to Plaintiff, he would be paged to the "School Building" on Sundays, when the building was closed, and Officer Fitzgerald would be waiting for him. Id. Plaintiff states that this "went on for months" and that when he "got enough nerve to make [Fitzgerald] stop," he was written up on false charges. Id. at 6.

Plaintiff alleges that he informed several people about some or all of these events including case manager Wright (who Berry did not realize was Officer Wright's sister), the "head psychologist," and his case manager, Olsen and that "nothing changed," but Olsen told him to "come talk to him" if it happened again. Id. Plaintiff also alleges that he prepared a "Prison Rape Elimination Act BP-8 remedy" and spoke with Lieutenants Miyoc and Hackney about it but they "threaten[ed] to

send [him] to SHU," and although he re-wrote his statement, neither "did anything to protect" him. Id. at 5-6.

Based upon these allegations, Plaintiff asserts constitutional claims for sexual assault against Defendants Wright and Fitzgerald in their individual capacities. As relief, Plaintiff seeks $5,000,000 in damages. See id. at 6.

Defendants answered the Complaint, ECF No. 16, and then moved for summary judgment before discovery, ECF No. 17. In support of their Motion for Summary Judgment, Defendants assert the judgment should be entered in their favor because Plaintiff failed to exhaust his administrative remedies regarding the claims alleged in the Complaint. See id. In support of their Motion, they provide the following undisputed facts regarding the exhaustion of Plaintiff's administrative remedies. See ECF No. 17-4.

Plaintiff arrived at FCI Fort Dix on August 19, 2014, and remained in custody there until March 1, 2016, when he was transferred to FCI Fairton in Fairton, New Jersey. See ECF No. 17-7. According to the BOP's records, Plaintiff has never filed an administrative remedy concerning the events alleged in his complaint. See ECF No. 17-6. These records show that Plaintiff has filed a total of five administrative remedies while in the custody of the Bureau of Prisons. See id. Specifically, Plaintiff has filed the following grievances:

3

- An April 2016 BP-10 Regional Office appeal from a disciplinary hearing (Remedy ID 859688-Rl), which was denied in May 2016;

- A June 2016 BP-11 Central Office appeal from the same disciplinary hearing (Remedy ID 859688-Al), which was denied in April 2017;

- An August 2016 BP-9 administrative remedy to the warden of FCI Fairton asking the records department to "stop trying to open old cases" (Remedy ID 872780-Fl), which was withdrawn at his request;

- An October 2016 BP-9 administrative remedy to the warden of FCI Fairton asking the BOP to remove a "point" on his custody classification for a prior escape (Remedy ID 879641-Fl), which was denied on October 28, 2016; and

- A November 2016 BP-9 administrative remedy to the warden of FCI Fairton asking the records department to "stop sending [a] detainer action letter" (Remedy ID 883711-Fl), which was denied on December 6, 2016.

See ECF Nos. 17-6, 17-7.

Plaintiff did, however, file an informal resolution form (a "BP-8") alleging that he was sexually harassed by Officer Wright. See id. In the BP-8, Plaintiff claimed that on August 26, 2014, he complained about the size of the clothing Wright had issued to him, and that Wright sexually harassed him by telling Plaintiff to turn around so that he could see if Plaintiff's underwear "were in fact tight and sticking in my rear end." Id. The BP-8 does not allege that Wright touched Plaintiff or assaulted him. See id. Plaintiff did not file a BP-9, BP-10, or BP-11 concerning the interaction with Defendant Wright alleged in the BP-8. See ECF No. 17-6.

4

On February 2, 2016, Plaintiff sent an e-mail to the Office of Inspector General (OIG) alleging that Officer Fitzgerald sexually assaulted him on January 12, 2016. See id. In particular, Plaintiff claimed that Officer Fitzgerald stared at him when he was in the shower, "touch[ed] my butt" through his back pocket during a pat search, and "stuck his hands onto my front pockets." Id. Plaintiff did not file a BP-9, BP-10, or BP-11 concerning the interaction with Defendant Fitzgerald alleged in this email. See ECF No. 17-6.

Plaintiff did not file a formal opposition brief to the Motion for Summary Judgment. He did, however, file a letter to the Court explaining that he started the administrative remedy process as to the sexual assault claims, but was forced to stop. ECF No. 22. Echoing the allegations of the Complaint, Plaintiff explained that he "was called to the Lieutenant's office. Once I got to the Lieutenant's Office and explained the situation, I was threatened not to go any further with any complaint concerning this matter, if I did, I'd be placed in the special housing unit (SHU)." Id. As a result of his inability to proceed with the grievance process, he was further assaulted by the officer. Id. In the letter, he requests the appointment of counsel and had, a few days prior, filed an application for the appointment of counsel, see ECF No. 21. The Court denied Plaintiff's first request for counsel because he failed to

satisfy the Tabron factors utilized by the court in assessing the appointment of counsel request. See ECF No. 29. Specifically, Plaintiff only stated that "Plaintiff does not know or understand the law, or know how to respond properly to address motions for the courts" and that he is "unable to pay an attorney." ECF No. 21.

Within days of the denial of his first request, Plaintiff filed a second request for the appointment of counsel, which provides more detail as to his need for counsel. ECF No. 30. This motion remains pending before the Court. Notably, for the purposes of this summary judgment motion, Plaintiff explains that "two lieutenants threatened Plaintiff not to move forward with any complaint concerning this matter" and that he "needs records of defendants that cannot be obtained without counsel. Plaintiff cannot receive any official records without counsel to assist Plaintiff." Id.

II. Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby,

6

Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

III. Discussion

The exhaustion of administrative remedies is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Specifically, § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a precondition for bringing suit and, as such, it is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" Small v. Camden County, 728 F.3d 265, 270 (3d Cir. 2013). "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take

8

some responsive action.  Booth v. Churner, 532 U.S. 731, 741 (2001).

The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'"  Jones v. Bock, 549 U.S. 199, 218 (2007).  See Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.").  The burden of proving non-exhaustion lies with the defendants asserting the defense.  Id. at 212, 216-17.  A court evaluating the "threshold" issue of exhaustion looks at whether the inmate "compli[ed] with the prison's specific grievance procedures" and whether those procedures were available to the inmate.  Rinaldi v United States, 904 F.3d 257, 265 (3d Cir. 2018) (quoting Drippe, 604 F.3d at 781 and Small v. Camden County, 728 F.3d at 269-71).

The BOP's Administrative Remedy Program is a multi-tier process that allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10.  The inmate first must attempt to informally resolve his issue with the institutional staff.  See id. § 542.13(a).  If informal resolution fails or is waived, the inmate then may

9

submit a formal Administrative Remedy Request on the appropriate BP-9 form within twenty calendar days following the date for which the basis for the request occurred. See id. § 542.14(a). If the inmate is unsatisfied with the warden's response to his Administrative Remedy Request, he may submit an appeal on the BP-10 form to the appropriate Regional Director within twenty calendar days of the date the warden signed the response. See id. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may appeal to the General Counsel on the appropriate BP-11 form within thirty calendar days of the date the Regional Director signed the response. See id. An inmate's appeal to the General Counsel is the final administrative appeal. See id. Thus, to satisfy the PLRA's exhaustion requirement, a federal inmate must complete each step of the BOP's administrative remedy process, which is not considered complete until an inmate's final appeal is considered by the Central Office. See 28 C.F.R. §§ 542.14-542.15; Rinaldi, 2018 WL 4344674, at *3; Schreane v. Marr, 722 F. App'x 160, 164 (3d Cir. 2018).

In support of the Motion for Summary Judgment for failure to exhaust administrative remedies, Defendants have submitted information related to the administrative grievances filed by Plaintiff, detailed above. In addition, Defendants assert Plaintiff started the administrative remedy process by filing an

informal request for resolution, the BP-8 form, for his sexual assault claims but failed to continue the process through all levels of the administrative remedy procedure. These facts are not in dispute. This does not end the Court's inquiry, however, because it must also consider whether the grievance procedures were "available" to Plaintiff.

In Ross v. Blake, 136 S. Ct. 1850 (2016), the Supreme Court most recently outlined the three instances in which remedies would not be "available" such that exhaustion may be excused: (1) when an administrative procedure "operates as a simple dead end with officers unable or consistently unwilling to provide relief to aggrieved inmates;" (2) where the administrative remedies are so unclear that "no ordinary prisoner can make sense of what it demands;" and (3) where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

Here, Plaintiff has argued that he could not exhaust his grievance because of the threats made against him, which, in light of his pro se status, the Court construes as arguing that the grievance system was not available to him under the third Ross scenario. This fact remains in dispute, and further, the Court construes Plaintiff's request for the need for records in his most recent application for appointment of counsel as a

request for discovery in order to oppose Defendants' Motion for Summary Judgment.

Federal Rule of Civil Procedure 56(d) provides as follows: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Summary judgment should generally be granted only when the nonmoving party has had an "adequate time for discovery." Celotex, 477 U.S. at 322. "[N]othing precludes a party from requesting an opportunity for discovery under Rule 56(d) by simply attaching an appropriate affidavit or declaration to that party's response to a motion for summary judgment, and by asserting that summary judgment should not be granted without affording the responding nonmovant an opportunity for discovery." Shelton v. Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015). In such circumstances, the court "is obligated to give a party opposing summary judgment an adequate opportunity to obtain discovery." Dowling v. City of Phila., 855 F.2d 136, 139-40 (3d Cir. 1988). Such requests for discovery are usually provided as a matter of course. Shelton, 775 F.3d at 568.

The Court is satisfied that Plaintiff, proceeding pro se and having requested the appointment of counsel to assist with

discovery in order to respond to the pending motion, has met his burden under Rule 56(d), and the Court will thus deny without prejudice the Motion for Summary Judgment.  After Plaintiff has had a reasonable opportunity to obtain discovery regarding exhaustion and more specifically whether the grievance system was available to him in light of the alleged threats, Defendants may refile their motion.

IV. Conclusion

The Court will deny without prejudice Defendants' Motion for Summary Judgment.  An appropriate order follows.


Dated: June 28, 2019             s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.