```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                   :
LARRY LAVONNE BERRY,               :
                                   :
         Plaintiff,                :   Civ. No. 17-4904 (NLH) (AMD)
                                   :
    v.                             :   OPINION
                                   :
                                   :
FBOP OFFICER                       :
STEPHEN FITZGERALD, et al.,        :
                                   :
         Defendants.               :
                                   :
_____:

APPEARANCES:

Jeffrey P. Resnick, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky, PA
East Gate Corporate Center
308 Harper Drive
Suite 200
Moorestown, NJ 08057

    *Attorneys for Plaintiff*

Philip R. Sellinger, United States Attorney
Kristin Lynn Vassallo, Assistant United States Attorney
Office of the United States Attorney
District of New Jersey
970 Broad Street
Newark, NJ 07102

    *Attorneys for Defendants*


HILLMAN, District Judge

    Plaintiff Larry Lavonne Berry is proceeding on an amended complaint against Defendants Stephen Fitzgerald and Robert Wright, pursuant to Bivens v. Six Unknown Named Agents of Fed.

Bureau of Narcotics, 403 U.S. 388 (1971), alleging they sexually assaulted him during his incarceration in FCI Fort Dix, New Jersey. Amended Complaint ("Am. Compl.") ECF No. 43. The amended complaint also alleges negligence, assault and battery, and intentional infliction of emotional distress claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Id. Defendants now move for summary judgment. ECF No. 75. Plaintiff opposes the motion. ECF No. 77.

For the reasons herein, the Court will grant the motion and enter judgment in Defendants' favor.

I.   BACKGROUND

Plaintiff arrived at FCI Fort Dix on August 19, 2014, and remained in custody there until he was transferred to FCI Fairton on March 1, 2016. Plaintiff's Response to Defendants' Statement of Material Facts ("PRSOF"), ECF No. 78 ¶ 1. On or about September 2, 2014, Plaintiff submitted a BP-8 informal resolution form regarding an encounter with Defendant Wright:

> Officer Wright verbally/sexually harassed me in the Laundry area by requesting that I drop my pants and show him how tight my underwear are on my ass before issuing larger underwear. However this is unprofessional and [inappropriate].
>
> Upon coming to FCI Fort Dix, I . . . was sexually harassed by Officer Wright in the Laundry on 8-20-14. I was issued (4) uniforms (4) underwear (4) Tee Shirt (4) socks. The uniforms and underwear were [too] tight. Officer Wright told me to come back on 8-26-14, which I

2

> did.  Upon entering the Laundry, Officer Wright had
> pulled my Laundry card.  Officer Wright told me it was
> not my day.  I informed the Officer that he told me to
> come back.  I requested for a change of underwear and
> uniforms to be changed a size bigger.  The Officer stated
> you people.  Then with no warning told me to pull down
> my pants and turn around, so that he can see my rear
> end, to determine if my underwear were in fact tight and
> sticking in my rear end.  This is very concerning and
> needs to be addressed.
>
> This kind of behavior is unprofessional and very
> inappropriate.  This is what I told the Officer.  Officer
> Wright, stated that I can go tell the Warden and or the
> A/W they are my people, and to make sure I tell them
> what I said.  Which was that the officer is being
> unprofessional, and not to engage in sexual Language
> with me, or acts.  Officer Wright yelled at me telling
> me to leave the Laundry, also stating that he isn't the
> one and he knows where I sleep.  I contacted the proper
> authorit[ies] and Family concerning this matter.  This
> is a no win situation that I'm in.  I've been sexually
> abused as a child, and I fear for my [safety].  Please
> transfer me because I don't need this Office planting
> any thing on me or in my property.  This will not be
> tolerated, "Sexual harassment" from staff or inmate.

ECF No. 75-5 at 36-40.  On September 4, 2014, Plaintiff asked to withdraw the BP-8:

> I was in the Lt. Office, app 1:45 discussing the BP:8,
> that was file[d] on 9-2-14.  I explained to the Lt.,
> that I feel as if the Officer in question is of no threat
> to myself, Larry L. Berry 70372-056, and I am requesting
> to drop the BP-8 that I wrote concerning the matter.

Id. at 35.  Lieutenant John Miosi later sent an email stating: "All inmate Barry wanted was institutional clothing that fit him.  Inmate Barry wrote a request while in the Office to drop the BP-8.  See attached.  Inmate Barry will be escorted to Laundry Friday to pick up institutional clothing.  Any further

3

questions, feel free to contact this Lieutenant." Id. at 34. Plaintiff disputes that this withdrawal was voluntary. PRSOF ¶ 5.

Plaintiff alleges that "[f]rom August 21, 2014 through about May 2015, defendant Wright assaulted plaintiff on numerous occasions while he was under the custodial, supervisory and disciplinary authority of the FBOP." Am. Compl. ¶ 12. "Defendant Wright inappropriately intimidated, coerced, victimized and assaulted plaintiff by forcing plaintiff to have sexual relations with him." Id. "During this time, defendant Wright verbally demanded sexual favors and harassed plaintiff." Id. ¶ 13.

Plaintiff further alleges that "[f]rom approximately June 2015 through January 2016, defendant Fitzgerald assaulted plaintiff on numerous occasions while he was under the custodial, supervisory and disciplinary authority of the FBOP." Id. ¶ 14. "Defendant Fitzgerald inappropriately intimidated, coerced, victimized and assaulted plaintiff by forcing plaintiff to have sex with him." Id. "Defendant Fitzgerald would call plaintiff to appear at the school building in 5842 on Sundays when the building was closed and, during this time, defendant Fitzgerald verbally demanded sexual favors and harassed plaintiff." Id. ¶ 15. "Plaintiff did not consent to the sexual

4

acts and assaults by defendants Wright and Fitzgerald." Id. ¶ 17.

"At all times, plaintiff feared retaliation and further abuse if he resisted or reported defendants Wright and Fitzgerald." Id. ¶ 16. Plaintiff states that whenever he tried to stop Defendant Fitzgerald, he "was written upon on false charges by or at the direction of defendant Fitzgerald." Id. ¶ 18. "Plaintiff informed several people about some or all of these events including case manager Wright (who plaintiff did not realize was defendant Wright's sister), the head psychologist and his case manager, Olsen, but nothing changed." Id. ¶ 19. Plaintiff alleges that he was threatened and coerced from filing internal charges against Defendants Wright and Fitzgerald. Id. ¶ 21.

On February 2, 2016, Plaintiff sent an email to the Department of Justice's Office of the Inspector General:

> on 1/12/2016 I larry lavonne berry, was sexually assuated by officer S. FITZGERALD in unit 5811 on the west compound. this was the resust of filing a sexual abuse charg on a OOFICE WRIGHT, that work the laundry. sense I file the sexual abuse charges. i've been a targe for staff here at fort dix.. maenly OFFICE WRIGHTS sister CASE MANAGER WRIGHT In bldg 5811 .. I informed me case manager of this abuse to no avail this harrassment continued .. before my encounter with office s. fitzgerald he approached me stating that I wrote a sexual abuse charge on one of his co-workers. which i did. then fitzgerald started searching me every chance he got. to the point. i was showering this officer came into the shower area and just stood there stairing at me. once i can out of the shower fitzgerald searched

5

> me. minutes later he can into my room saying nothing.
> than left shortly returning, stateing shack down
> search.. officer fitzgerald let four withe man just
> walk out the room. stopping me pat fricking! me twice
> then useing the ward. my belt buckle beepin i removed
> the belt there was no beeping .. than the officer took
> his gloves off. and stuck his hands into my back pockets
> palms touching my butt, tham stuck his hand into my front
> pockets. by this time i became fereful. once i was
> free to go i walked off fast them ran to the stairs ..
> bottom line i received three shots 115 198 199 307. i
> beat all excecp the 307 .. im now In the S-H-U. with
> loss commissary. I didnt take any urin samply. however
> i just got a stot for a dirty urin .. this is a ploy to
> send me back to a higher classifacation institution, i
> dont get high off of anything. never have never will.
> my kiddey are shot.

ECF No. 77-7 at 2 (reproduced as filed). Plaintiff requested an institutional transfer and was transferred to FCI Fairton on or about March 1, 2016. Am. Compl. ¶ 11.

Plaintiffs filed his original complaint on July 5, 2017. ECF No. 1. Defendants answered the Complaint, ECF No. 16, and then moved for summary judgment before discovery on the grounds that Plaintiff failed to exhaust his administrative remedies, ECF No. 17. Plaintiff did not file a formal opposition brief to the motion, but he did file a letter to the Court explaining that he started the administrative remedy process as to the sexual assault claims, but was forced to stop. ECF No. 22. He also filed a motion for the appointment of pro bono counsel. ECF No. 30.

Relying on Federal Rule of Civil Procedure 56(d), the Court denied the motion for summary judgment without prejudice on June

28, 2019.  ECF No. 32.  The Court further granted Plaintiff's motion for the appointment of counsel.  ECF No. 33.  Plaintiff filed an amended complaint with leave of court after the appointment of pro bono counsel.[1]  ECF No. 43.

Defendants now move for summary judgment on the amended complaint.  ECF No. 75.  Plaintiff opposes the motion.  ECF No. 77.  At the Court's request, the parties submitted supplemental briefing on the Supreme Court's decision in Egbert v. Boule, 142 S. Ct. 1793 (2022) which was handed down after briefing closed.  ECF Nos. 84 & 85.  The Court also permitted, but did not require, the parties to submit any other evidence, such as affidavits or declarations, that they wished the Court to consider on Plaintiff's exhaustion of administrative remedies.  ECF No. 83 (citing Fed. R. Civ. P. 56(e)(1); Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018)).

II.  STANDARD OF REVIEW

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a

---

[1] The Court acknowledges and appreciates the advocacy of Jeffrey P. Resnick, Esq. of Sherman, Silverstein, Kohl, Rose & Podolsky, PA, who accepted appointment as pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) and this Court's Plan for Appointment of Attorneys in Pro Se Civil Actions, see App. H of the Local Civil Rules of the District of New Jersey.

7

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 250.  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."  Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

III. DISCUSSION

A.   Constitutional Claims

Plaintiff alleges Defendants Wright and Fitzgerald violated the Eighth Amendment's prohibition on cruel and unusual punishment when they sexually assaulted him at FCI Fort Dix.

8

Before the Court can address whether Plaintiff exhausted his administrative remedies for these claims, it must first determine whether he has a cause of action at all.

"In Bivens, the Court held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Egbert v. Boule, 142 S. Ct. 1793, 1802 (2022) (quoting Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971)). "Over the following decade, the Court twice again fashioned new causes of action under the Constitution — first, for a former congressional staffer's Fifth Amendment sex-discrimination claim; and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment." Id. (citing Davis v. Passman, 442 U.S. 228 (1979); Carlson v. Green, 446 U.S. 14 (1980)). "Since these cases, the Court has not implied additional causes of action under the Constitution." Id.

In 2017, the Supreme Court concluded "that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, 582 U.S. 120, 135 (2017). See also Hernández v. Mesa, 140 S. Ct. 735, 742 (2020) ("In both statutory and constitutional cases, our watchword is caution."). "These three cases — Bivens, Davis, and Carlson — represent the only instances in which the Court has approved of an implied damages

9

remedy under the Constitution itself." Abbasi, 582 U.S. at 131. "Indeed, in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three Bivens cases might have been different if they were decided today." Id. at 134.

Abbasi "created a funnel through which plaintiffs alleging constitutional violations by federal officials must pass." Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018). "First, we ask whether the case presents 'a new Bivens context' — i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 582 U.S. at 139-40). "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Shorter v. United States, 12 F.4th 366, 372 (3d Cir. 2021).

The Supreme Court's "understanding of a 'new context' is broad." Hernández, 140 S. Ct. at 743. "[A] new context arises when there are 'potential special factors that previous Bivens cases did not consider.'" Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 582 U.S. at 140). Plaintiff argues his claims do not present a new context under Bivens because "[t]he Third Circuit has recognized that [Farmer v. Brennan, 511 U.S. 825 (1994)] extends to encompass plaintiff's Eighth Amendment Claim." ECF No. 84 at 7 (citing Shorter). "Defendants attempt to

10

distinguish this matter from Farmer and Shorter, as those cases involved a sexual assault by a fellow inmate. However, this difference is immaterial, rather, the conduct of the offending officers is key." Id.

In Shorter, the Third Circuit held that a transgender female inmate's claim that prison officials failed to protect her from being sexually assaulted by other inmates did not present a new Bivens context. "Farmer made clear, in circumstances virtually indistinguishable from our case, that an Eighth Amendment Bivens remedy is available to a transgender prisoner who has been assaulted by a fellow inmate." 12 F. 4th at 373. The Supreme Court has never included Farmer in its list of prior acceptable Bivens actions,[2] and the Third Circuit decided Shorter before the Supreme Court issued Egbert. However, Plaintiff's case is distinguishable from Farmer even if the Court may rely on it after Abbasi, Hernández, and Egbert.

Unlike the plaintiffs in Farmer and Shorter, Plaintiff is not alleging that prison officials failed to protect him from other inmates. This difference is not immaterial. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages

---

[2] The Third Circuit concluded "the Supreme Court in Abbasi neglected to name Farmer because it saw that case as falling under the umbrella of Carlson . . . ." Shorter, 12 F.4th at 373 n.5 (citing Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018)).

remedy was previously recognized." Hernández, 140 S. Ct. at 743. Shorter relied on Farmer's holding that "a federal prisoner ha[s] a clearly established constitutional right to have prison officials protect him from inmate violence and has a damages remedy when officials violate that right." Shorter, 12 F. 4th at 373 (internal quotation marks omitted) (alteration in original) (emphasis added). See also Bistrian v. Levi, 912 F.3d 79, 94 (3d Cir. 2018) ("Abbasi changed the framework of analysis for Bivens claims generally, but not the existence of the particular right to Bivens relief for prisoner-on-prisoner violence."). Despite both claims being premised on the Eighth Amendment, the fact that Plaintiff is not alleging Defendants failed to protect him from inmate violence makes his case "meaningfully different" than Farmer. See also Abbasi, 582 U.S. at 139-40 ("A case might differ in a meaningful way because of the rank of the officers involved" or "the constitutional right at issue").

Plaintiff's allegations of sexual assault by BOP corrections officers were not contemplated by the Supreme Court's decisions in Bivens, Davis, or Carlson, and the facts of his case are distinguishable from Farmer. Accordingly, the Court concludes that Plaintiff's claim presents a "new context." See also Greene v. United States, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (unreported) (holding

12

plaintiff's "Eighth Amendment claims against federal corrections officers and officials for conspiracy, excessive force, sexual harassment, sexual assault, and failure to protect arise in 'a new context' and involve a 'new category of defendants'"); Ball v. Streeval, No. 7:20-CV-00558, 2023 WL 1930003, at *4 (W.D. Va. Feb. 9, 2023) (holding plaintiff's allegations that "various defendants subjected him to cruel and unusual punishment in the form of beatings, threats, sexual assault, and painful restraints" were "sufficiently different to constitute a new Bivens context"); Carthen v. Scott, No. 119CV00227ADAEPGPC, 2023 WL 346675, at *6 (E.D. Cal. Jan. 20, 2023) ("As Plaintiff's Eighth Amendment sexual harassment/sexual assault claims involve entirely different conduct than the conduct in Carlson, Plaintiff's Eighth Amendment claims also arise in a new context."). The Court must now proceed to the second stage of the Abbasi analysis.

"[I]f a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 142 S. Ct. at 1803 (quoting Abbasi, 582 U.S. at 136). "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Id. (quoting Hernández, 140 S. Ct. at 743).

13

See also Graber v. Doe II, 59 F.4th 603, 609 (3d Cir. 2023) ("Bivens actions are very limited, and new ones cannot be created where 'there is any rational reason (even one) to think that Congress is better suited to "weigh the costs and benefits of allowing a damages action to proceed."'" (quoting Egbert, 142 S. Ct. at 1805)).

Plaintiff concedes in his supplemental briefing that Egbert's "standard is extraordinarily restrictive as it bars extension of a new Bivens context so long as the potential for such 'harmful or inappropriate' judicial intrusion to exist is an extraordinarily high bar. Plaintiff would be unable to meet the restrictive standard announced in Egbert as the potential for such consequences exist." ECF No. 84 at 8. The Court is constrained to agree.

The Court does not reach this decision lightly. Plaintiff has made, and testified to under oath, serious allegations of sexual assault at the hands of federal corrections officers. "Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual contact." Ricks v. Shover, 891 F.3d 468, 471 (3d Cir. 2018). Staff sexual abuse of prisoners is "objectively, sufficiently serious to constitute an Eighth Amendment violation." White v. Ottinger, 442 F. Supp. 2d 236, 248 (E.D. Pa. 2006). "[S]exual abuse 'tend[s] rather to cause

14

significant distress and often lasting psychological harm.'" Ricks, 891 F.3d at 477 (quoting Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012)) (second alteration in original).

However, "this court is obligated to faithfully apply binding precedent, such as Egbert, in the cases before it, no matter how egregious the allegations of abuse are." Jean v. Smallwood, No. 7:20-CV-00415, 2022 WL 17969091, at *7 (W.D. Va. Dec. 27, 2022). The Supreme Court has held that "a court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" Egbert, 142 S. Ct. at 1804 (quoting Abbasi, 582 U.S. at 137). The Supreme Court has held that the BOP's Administrative Remedy program satisfies this requirement. Id. at 1806 (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001)). Accordingly, the Court must dismiss Plaintiff's constitutional claims against Defendants Wright and Fitzgerald as Bivens does not afford him a remedy absent Congressional action.

B.  Federal Tort Claims Act

Defendant United States argues Plaintiff's FTCA claims must be dismissed as Plaintiff did not exhaust his administrative remedies before filing suit. Plaintiff responds that "[w]hile plaintiff agrees that a formal Notice of Intent to Sue was not filed with the Bureau of Prisons, the February 2, 2016 email

complaint he filed with the Office of the Inspector General satisfies the prerequisite of the FTCA." ECF No. 77 at 15. See also ECF No. 77-7 at 2.

"The FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Gould Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000) (quoting 28 U.S.C. § 1346(b)(1)) (emphasis omitted), modified on other grounds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003). This waiver of sovereign immunity is limited, however. "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989).

"[A]n FTCA action 'shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency . . . .'" White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010) (quoting 28 U.S.C. § 2675(a)) (omissions in original). The statute "further specifies that an FTCA action 'shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency . . .

.'" Id. (omission in original) (emphasis omitted). "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States's consent to be sued, they are jurisdictional." Id. (citing United States v. Sherwood, 312 U.S. 584, 586 (1941); Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971)).

"[N]otice in the form of an administrative claim 'satisfies section 2675's requirement ... if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.'" Roma v. United States, 344 F.3d 352, 362-63 (3d Cir. 2003) (quoting Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir. 1982)) (omission in original). Plaintiff relies on his February 2, 2016 email to the Office of the Inspector General for the presentation of his claim. Even if the Court presumes that the email satisfactorily presents the factual basis of Plaintiff's claim, the email is insufficient under the FTCA because it was not submitted to the Bureau of Prisons[3] and does not contain a sum-certain demand as is required

---

[3] The Office of the Inspector General is an independent unit within the Department of Justice that conducts and supervises audits, "provide[s] leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency, and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations" and "provide[s] a means for keeping the head of the

17

by the statute. ECF No. 77-7 at 2. "[T]he sum certain requirement is . . . tethered to the grant of jurisdiction . . . ." White-Squire, 592 F.3d at 457. "Thus, a claimant's failure to present [his] FTCA claim to the appropriate agency with a sum certain, as required by § 2675(b), compels the conclusion that a district court lacks subject matter jurisdiction over the claim." Id. at 458. See also Livera v. First Nat. State Bank of New Jersey, 879 F.2d 1186, 1195 (3d Cir. 1989) ("[W]e are compelled to find the complaint inadequate for administrative purposes under the Tort Claims Act since the complaint failed to state damages in a sum certain as mandated by 28 C.F.R. § 14.2(b)(1), which sets forth the content standards required for tort claims against the United States."). The Court must dismiss Plaintiff's FTCA claims for lack of jurisdiction.

Plaintiff's argument that the Court should equitably toll the time for filing FTCA remedies because he was coerced into withdrawing his BP-8 does not save his claims. See ECF No. 77 at 14-15. "The BOP's Administrative Remedy Program is separate and distinct from the statutory administrative procedures under the FTCA. Each procedure has separate forms and filing deadlines." Gillie v. Esposito, No. 14-3704, 2018 WL 6499864,

---

establishment and the Congress fully and currently informed about problems and deficiencies relating to the administration of such programs and operations and the necessity for and progress of corrective action." 5 U.S.C. § App. 3 § 2 (1)-(3).

at *4 (D.N.J. Dec. 11, 2018) (citing 28 C.F.R. § 542.10(c)). Plaintiff's claim that BOP officials coerced him into withdrawing his BOP administrative claim does not suggest that BOP officials prevented him from filing a claim under the FTCA.

IV.  CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment.  Judgment will be entered in Defendants' favor.

An appropriate Order follows.


Dated: March 9, 2023                s/ Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.